UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LATIFA JAFFER, et al.,

                              Plaintiffs,

        v.

NAUSHAD M. HIRJI, et al.,

                              Defendants.

No. 14-CV-2127 (KMK)

OPINION AND ORDER

Appearances:

Costantino Fragale, Esq.
Law Office of Costantino Fragale
Eastchester, NY
*Counsel for Plaintiffs*

Andrew D. Brodnick, Esq.
Mount Kisco, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiffs Latifa Jaffer ("Latifa"), Hussein Jaffer ("Hussein"), Ahmed M. Hirji

("Ahmed"), and Shehzad Hirji ("Shehzad") (collectively, "Plaintiffs") filed the instant Amended

Complaint against Naushad M. Hirji ("Naushad") and Sabira Hirji ("Sabira") (collectively,

"Defendants"), alleging claims for constructive trust and adverse possession related to a property

located at 662 Secor Road, Hartsdale, New York (the "Property").  Before the Court is

Defendants' Motion for Judgment on the Pleadings.  (*See* Notice of Mot. ("Mot.") (Dkt. No.

17).)  For the following reasons, Defendants' Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiffs' Amended Complaint and are taken as true for the purpose of resolving the instant Motion.  In or about December 1982, Mohamed Hussein Hirji ("Mohamed") and Zehra Hirji ("Zehra") were married, lived in Tanzania, and had seven children as follows (listed in order of their age): Latifa, Farida, Naushad, Shamim, Effat, Mustafa, and Ahmed.  (Am. Compl. ¶ 3 (Dkt. No. 12).)  Latifa presently resides at the Property with her husband, Hussein.  (*Id.* ¶ 4.)  Ahmed resides at the Property with his son, Shehzad.  (*Id.* ¶ 5.)  Naushad is married to Sabira and they live together in Tanzania.  (*Id.* ¶ 6.)  Farida died in Tanzania in 2009 and is survived by two children.  (*Id.* ¶ 7.)  Shamim died in Tanzania in 2003 and is survived by two children.  (*Id.*)  Effat currently lives in Tanzania, and Mustafa currently lives in New York.  (*Id.*)

In or about July 1982, a deed was executed that named Ahmed and Mustafa as the grantees of the Property.  (*Id.* ¶ 8.)  In or about December 1982, Ahmed and Mustafa, as grantors, deeded the Property to themselves and their mother, Zehra, as joint tenants (the "First Deed").  (*Id.* ¶ 9.)  No consideration was paid for the addition of Zehra as a fee owner of the Property under the First Deed.  (*Id.*)

In or about 1984, Zehra died intestate in New York, where she had temporarily relocated from Tanzania to receive medical treatment.  (*Id.* ¶ 10.)  On or about December 5, 1989, Mustafa and Ahmed, as grantors, deeded the Property to their father, Mohamed, and their eldest brother, Naushad, as joint tenants with right of survivorship (the "Second Deed").  (*Id.* ¶ 11.)  The Second Deed was made at the request of Mohamed, (*id.* ¶ 22), and no consideration was paid for the transfer of the Property under the Second Deed, (*id.* ¶ 12).

At the time of the Second Deed, Mohamed was seeking to re-marry, and it was Plaintiffs'
intent to vest title in the Property to their father to maximize his ability to find a new wife. (*Id.*
¶ 13.) Naushad was added as a nominee grantee to keep the Property within the family because
Mohamed "did not then have a Last Will and Testament and resided in Tanzania
and . . . Plaintiffs mistakenly believed that should Mohamed die without a will, the Property
would become property of the State of New York." (*Id.* ¶ 14.) Plaintiffs allege that the Second
Deed was made "with the express understanding that . . . Plaintiffs would be permitted to reside
at the [Property] for as long as they should live and that the house would be owned equally by
each of Mohamed[]'s . . . children." (*Id.* ¶ 22.) Moreover, at the time of and prior to the
execution and delivery of the Second Deed to Naushad, Plaintiffs allege that "the [P]arties were
in a confidential relationship and . . . Plaintiffs had the utmost trust and confidence
in . . . [Naushad], . . . which is why the Second Deed was executed in accordance with the
parties' religious and cultural traditions." (*Id.* ¶ 23.) Plaintiffs allege that it was understood that
Mohamed and Naushad were to hold complete legal title to the Property in trust for the purpose
of allowing Plaintiffs to reside at the Property, and Ahmed relied upon this understanding in
deciding to sign and deliver the Second Deed. (*Id.* ¶ 24.) Plaintiffs explain that the family "has a
history of having certain older family members hold legal title to real property in trust for
younger family members." (*Id.* ¶ 25.) Plaintiffs state that, for example, Hussein holds legal title
to Mustafa's residence in Ossining, New York, in trust for Mustafa, his younger brother-in-law.
(*Id.*)

In or about 1998, Mohamed died intestate in Tanzania. (*Id.* ¶ 15.) In or about February
2001, Naushad, as grantor, deeded the Property to himself and his wife, Sabira as tenants by the
entirety (the "Third Deed"). (*Id.* ¶ 16; Aff. of Andrew D. Brodnick ("Brodnick Aff.") Ex. F

(Dkt. No. 17).)[1]  On or about January 22, 2014, Naushad, through his agent and attorney, Naushina Esmail, issued a Notice of Termination (the "Notice") to Plaintiffs, which indicated that Plaintiffs were required to "remove and vacate" the Property by no later than February 28, 2014, and that upon their failure to do so, a summary proceeding would be commenced against Plaintiffs to have them evicted and removed from the Property.  (Am. Compl. ¶ 17.)

Prior to and at all times subsequent to 1984, Plaintiffs were in actual possession of the Property, they paid real estate taxes on the Property, they made all repairs and capital improvements to the Property at their own cost and expense, and they held themselves out as owners of the Property.  (*Id.* ¶¶ 18–19.)  Plaintiffs allege that they are the de facto owners and in possession of the Property because, among other things, "[t]here has been actual and continuous occupation and possession of the Property by Plaintiffs since 1984 and for more than 25 years since [D]efendants became the fee simple owners of the Property pursuant to the Second Deed and [the Third Deed]."  (*Id.* ¶ 32–33.)

---

[1] The Court considers the deed in the instant Motion.  "The Second Circuit has explained that a 'necessary prerequisite for the exception' that materials integral to the complaint may be considered on a motion to dismiss [or for judgment on the pleadings] 'is that the plaintiff *rely* on the terms and effect of the document in drafting the complaint . . .; mere notice or possession is not enough.'"  *Alvarez v. Cty. of Orange*, — F. Supp. 3d — , 2015 WL 1332347, at *9 (S.D.N.Y. Mar. 25, 2015) (second alteration in original) (some internal quotation marks omitted) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006)).  Here, Plaintiffs allege that "[i]n or about February 2011, [Naushad], as grantor, deeded the Property to himself and . . . Sabira," (Am. Compl. ¶ 16), and all of Plaintiffs' claims center on the deeds related to the Property.  Accordingly, Plaintiffs' Amended Complaint "relies heavily upon the terms and effects of the deed."  *Smith v. Manhattan Club Timeshare Ass'n*, 944 F. Supp. 2d 244, 254 n.3 (S.D.N.Y. 2013).  Moreover, "[o]n a motion to dismiss, courts may take judicial notice of public records, such as properly recorded deeds."  *Awan v. Ashcroft*, No. 09-CV-1653, 2010 WL 3924849, at *2 (E.D.N.Y. Sept. 28, 2010); *see also Costello v. Town of Huntington*, No. 14-CV-2061, 2015 WL 1396448, at *2 n.2 (E.D.N.Y. Mar. 25, 2015) (same).

### B.  Procedural History

Plaintiffs filed the original Complaint in the Supreme Court of the State of New York, County of Westchester, and the Complaint was removed to this Court on March 26, 2014 based on diversity jurisdiction.  (Dkt. No. 1.)  Defendants filed an answer and a counterclaim on March 31, 2014.  (Dkt. No. 3.)  On September 29, 2014, Plaintiffs filed the Amended Complaint seeking a constructive trust and claiming adverse possession of the Property.  (Dkt. No. 12.) Defendants filed an answer on October 17, 2014.  (Dkt. No. 13.)  Pursuant to a scheduling order so ordered on October 23, 2014, (Dkt. No. 16), Defendants filed their Motion For Judgment on the Pleadings and their supporting papers on November 14, 2014 and November 17, 2014, (Dkt. Nos. 17–19), Plaintiffs filed their Memorandum of Law in Opposition to the Motion on December 12, 2014, (Dkt. No. 21), and Defendants filed their reply on January 9, 2015, (Dkt. No. 22).

### II.  Discussion

### A.  Standard of Review

"The standard of review on a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is the same as the standard of review applied to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Marte v. Safety Bldg. Cleaning Corp.*, No. 08-CV-1233, 2009 WL 2827976, at *1 (S.D.N.Y. Sept. 2, 2009); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011) ("In deciding a Rule 12(c) motion, we employ the same standard applicable to dismissals pursuant to Rule 12(b)(6)." (alterations and internal quotation marks omitted)).  The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original).  Instead, the Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

For the purposes of Defendants' Motion, the Court is required to consider as true the factual allegations contained in the Complaint.  *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (italics and internal quotation marks omitted)); *see also Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same).  In deciding the Motion, the court "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*,

199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted) (applying standard to a Rule 12(b)(6) motion); *see also Smith v. City of New York*, No. 13-CV-2395, 2014 WL 4904557, at *3 (E.D.N.Y. Sept. 30, 2014) ("When deciding a motion on the pleadings, the court must confine its consideration to the pleadings and their attachments, to documents . . . incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (alteration in original) (internal quotation marks omitted)).

Finally, "[a] statute of limitations defense is an affirmative defense that a defendant must plead and prove." *Rite Aid Corp. v. Am. Express Travel Related Servs. Co.*, 708 F. Supp. 2d 257, 263 (E.D.N.Y. 2010) (citing Fed. R. Civ. P. 8(c)(1)). "[C]ourts may nonetheless dismiss a case on statute of limitations grounds if a complaint, on its face, 'clearly shows the claim is out of time.'" *Boles v. Eastman Kodak Co.*, No. 14-CV-6243, 2015 WL 213248, at *1 (W.D.N.Y. Jan. 14, 2015) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)). "Because a failure-to-state-a-claim defense can be brought on a motion for judgment on the pleadings, it follows that a defendant may properly bring a statute-of-limitations defense on a motion for judgment on the pleadings." *Rite Aid Corp.*, 708 F. Supp. 2d at 263 (citing *Higgins v. N.Y. Stock Exch., Inc.*, 942 F.2d 829, 831 (2d Cir. 1991)).

B.  Constructive Trust Claim

1.  Applicable Law

"A constructive trust will be imposed where property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest." *Van Brunt v. Rauschenberg*, 799 F. Supp. 1467, 1474 (S.D.N.Y. 1992) (internal quotation marks omitted).  The purpose of a constructive trust is to prevent unjust enrichment, although the existence of unjust enrichment does not reflect the commission of a wrongful act by

the enriched party.  *See Simonds v. Simonds*, 380 N.E.2d 189, 194 (N.Y. 1978); *see also Beatty v. Guggenheim Expl. Co.*, 122 N.E. 378, 380 (N.Y. 1919) ("A constructive trust is the formula through which the conscience of equity finds expression."), *superseded by statute as recognized in Israel v. Chabra*, 906 N.E.2d 374, 377–78 (N.Y. 2009).  "Under New York law, a party claiming entitlement to a constructive trust must ordinarily establish four elements: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment."  *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 352 (2d Cir. 1992); *see also Counihan v. Allstate Ins.*, 194 F.3d 357, 361–62 (2d Cir. 1999) (same).  The Second Circuit has "observed that, although these factors provide important guideposts, the constructive trust doctrine is equitable in nature and should not be rigidly limited."  *Counihan*, 194 F.3d at 362 (alteration and internal quotation marks omitted); *see also Lia v. Saporito*, 909 F. Supp. 2d 149, 172 (E.D.N.Y. 2012) (same), *aff'd*, 541 F. App'x 71 (2d Cir. 2013).  "What the New York courts do insist upon is a showing that property is held under circumstances that render unconscionable and inequitable the continued holding of the property and that the remedy is essential to prevent unjust enrichment."  *Counihan*, 194 F.3d at 362.

"A cause of action for a consecutive trust is governed by New York's six-year statute of limitations applicable to those claims 'for which no limitation is specifically prescribed by law.'" *Reale v. Reale*, 485 F. Supp. 2d 247, 252 (W.D.N.Y. 2007) (quoting N.Y. C.P.L.R. § 213(1)).

> The statute of limitations for a constructive trust claim "starts to run upon the occurrence of the wrongful act giving rise to a duty of restitution.  A determination of when the wrongful act triggering the running of the statute of limitations occurs depends upon whether the constructive trustee acquired the property wrongfully, in which case the property would be held adversely from the date of acquisition, or whether the constructive trustee wrongfully withholds property acquired lawfully from the beneficiary, in which case the property would be held adversely from the date the trustee breaches or repudiates the agreement

to transfer the property."

*Quiroga v. Fall River Music, Inc.*, No. 93-CV-3914, 1998 WL 851574, at *34 (S.D.N.Y. Dec. 7,

1998) (quoting *Sitkowski v. Petzing*, 572 N.Y.S.2d 930, 932 (App. Div. 1991)); *see also*

*McGovern v. Solomon*, 466 F. Supp. 2d 554, 558 (S.D.N.Y. 2006) ("Under New York law, an

action for a constructive trust begins to accrue, and the limitations period begins to run, as of the

date when the acts occurred on which the claim of constructive trust is predicated." (internal

quotation marks omitted)).  "Generally, the date of the 'wrongful act' 'is the date that the party

holding legal title takes some action that is inconsistent with the promise he made to the

transferor.'"  *Saporito*, 909 F. Supp. 2d at 167 (quoting *Reale*, 485 F. Supp. 2d at 252).

Moreover, an equitable constructive trust claim "accrues when the party seeking to impose the

trust knows or should have known of the wrongful withholding."  *Two Clinton Square Corp. v.

Friedler*, 459 N.Y.S.2d 179, 181 (App. Div. 1983).

      2.  Application

      Defendants argue that the six-year statute of limitations on Plaintiffs' constructive trust

claim has run.  (Defs.' Mem. of Law ("Defs.' Mem.") 4 (Dkt. No. 19).)  Specifically, Defendants

contend that the Third Deed constituted a breach of the constructive trust and, therefore, the

statute of limitations began to accrue in 2001.  (*Id.* at 4–5.)  Plaintiffs, in turn, claim that

Naushad never "acquire[d] the property wrongfully," and, accordingly, "the statute of limitations

would begin to run at that point in time when Naushad . . . wrongfully withheld the Property

from Plaintiffs" in 2014.  (Pls.' Mem. of Law in Opp'n to Defs.' Mot. for Judgment on the

Pleadings ("Pls.' Mem.") 11 (Dkt. No. 21) (internal quotation marks omitted).)

      "A determination of when the wrongful act triggering the running of the Statute of

Limitations occurs depends upon whether the constructive trustee acquired the property

wrongfully, in which case the property would be held adversely from the date of acquisition *or* whether the constructive trustee wrongfully withholds property acquired lawfully from the beneficiary, in which case the property would be held adversely from the date the trustee breaches or repudiates the agreement to transfer the property." *Tornheim v. Tornheim*, 888 N.Y.S.2d 603, 605 (App. Div. 2009) (emphasis added) (alteration and internal quotation marks omitted).

Here, Plaintiffs do not allege that Defendants acquired the property wrongfully. Rather, Plaintiffs allege that Naushad wrongfully withheld the Property that he acquired lawfully from Ahmed and Mustafa. Specifically, on or about December 5, 1989, Mustafa and Ahmed deeded the Property to their father and Naushad as joint tenants with right of survivorship. (Am. Compl. ¶ 11.) Plaintiffs allege that the deed was executed and delivered to their father and Naushad "with the express understanding that . . . Plaintiffs would be permitted to reside at the [Property] for as long as they should live and that the house would be owned equally by each of Mohamed[]'s children." (*Id.* ¶ 22.) On or about January 22, 2014, Naushad issued the Notice to Plaintiffs that Plaintiffs were required to "remove and vacate" the Property by no later than February 28, 2014. (*Id.* ¶ 17.) These allegations are sufficient to allege that Naushad acquired the Property lawfully and wrongfully withheld the Property in 2014, thus triggering the statute of limitations on Plaintiffs' constructive trust claim. *See Morris v. Gianelli*, 897 N.Y.S.2d 210, 211–12 (App. Div. 2010) (reversing the trial court's determination that the defendants had demonstrated the constructive trust claim was time-barred because the complaint "allege[d] that the wrongful act that triggered the running of the statute of limitations did not occur until after the death of the parties' father," when the defendants refused to convey to plaintiff her share in the properties, which they had promised their father when the father executed the deeds

conveying the properties from him to the defendants); *Zane v. Minion*, 882 N.Y.S.2d 255, 257 (App. Div. 2009) (holding that the plaintiff's claim brought in 2008 for a constructive trust was not time barred because the claim "accrued when the defendant allegedly failed to honor her promises, which, according to the complaint, occurred in late 2005 or early 2006"); *Panish v. Panish*, No. 05-01111, 2005 WL 1364510, at *2 (N.Y. Sup. Ct. Apr. 15, 2005) (rejecting the defendant's contention that the action was untimely since the property was acquired in 1996 because "the complaint [did] not appear to allege that the defendant acquired the property wrongfully but rather, that he refused to reconvey the property at a later date," and thus "the defendant has not established that the action is time-barred").

Even though the Amended Complaint states that in or about February 2001, Naushad deeded the Property to himself and Sabira, (Am. Compl. ¶ 16), Plaintiffs' claim is not based on this transfer, but rather on the alleged breach of the agreement in 1989 to allow Plaintiffs to reside at the Property for as long as they should live.  *See Sitkowski*, 572 N.Y.S.2d at 932 (explaining that "the gravamen of the plaintiff's complaint is not that the constructive trustee acquired the property wrongfully, but rather, that the defendant breached the trust relationship at some later date"); *Bodden v. Kean*, No. 23250/2008, 2009 WL 8574335, at *3 (N.Y. Sup. Ct. May 22, 2009) ("Here, evidence supports [the] plaintiff's claim that [the] defendant did not repudiate his duty as constructive trustee until June 2008 when he refused to convey the property to [the] plaintiff.  The gravamen of [the] plaintiff's complaint is not that [the] defendant acquired the property wrongfully in June 1997, but, rather, that he breached the trust relationship in June 2008 when he refused to convey the property to [the] plaintiff."), *adhered to on reargument*, 2010 WL 8415297 (N.Y. Sup. Ct. Jan. 26, 2010), *aff'd*, 927 N.Y.S.2d 137 (App. Div. 2011). Contrary to Defendants' suggestion, the Third Deed does not definitively establish that the

statute of limitations began to run in 2001.  "The law requires proof of a repudiation by the fiduciary which is [c]lear and made known to the beneficiaries."  *In re Barabash Estate*, 286 N.E. 2d 268, 270 (N.Y. 1972); *see also Bodden*, 2009 WL 8574335, at *3 (same).

Naushad deeded the property to himself and Sabira in 2001, which made Sabira a tenant by the entirety.  Assuming that in theory by execution of the Third Deed, Sabrina held title to the whole of the Property, *see Matter of Gosier v. Aubertine*, 891 N.Y.S.2d 788, 790 (App. Div. 2009) (explaining that "the salient characteristic of a tenancy by the entirety is the unique relationship between a husband and his wife each of whom is seized of the whole and not of any undivided portion of the estate such that both and each own the entire fee" (alterations and internal quotation marks omitted)), and was entitled to a life estate in the Property, *see Cardozo v. Wlasiuk*, 777 N.Y.S.2d 615, 617 (Sup. Ct. 2004) (noting "the principle that the individual property interests held by spouses who own property as tenants by the entirety as having a life estate in the subject property, subject to the right of survivorship of the co-tenant spouse"), Plaintiffs do not allege that Sabira exercised her rights to their exclusion prior to 2014, or that there were other indications of a breach or repudiation of the agreement made in 1989.[2]  In other words, while the Third Deed arguably may have constituted a clear breach or repudiation of the agreement between Naushad and Plaintiffs, Plaintiffs allege otherwise and indeed resided in the Property and therefore received the benefits of the agreement until they were told to leave in 2014.  Accordingly, even though Sabira became a tenant in the entirety in 2001, (*see* Brodnick Aff. Ex. F.), Defendants have not established that the Third Deed constituted a clear breach or repudiation of the agreement to trigger the statute of limitations in 2001.  *See Kopelman v.*

---

[2] The Court notes that the factual landscape concerning the circumstances and understandings of the Parties at the time the Third Deed was executed will likely be developed through discovery.

*Kopelman*, 710 F. Supp. 99, 103 (S.D.N.Y. 1989) (noting that the parties disagreed on what wrongful act gave rise to a restitution duty for the plaintiff's constructive trust claim and denying the defendant's motion for summary judgment because "[a]t the very least, there are factual issues relative to the commencement of the limitations period"); *Maric Piping, Inc. v. Maric*, 705 N.Y.S.2d 684, 685 (App. Div. 2000) (holding that the supreme court erred in dismissing the claim seeking to impose a constructive trust as barred by the statute of limitations because the plaintiffs alleged that the defendant breached a fiduciary duty by refusing to convey interest in the property after its acquisition and, accordingly, there were questions of fact as to when the defendant "allegedly breached any agreement by refusing to convey . . . interest in the property"); *Mardiros v. Ghaly*, 614 N.Y.S.2d 436, 436–37 (App. Div. 1994) (explaining that the defendants contended that the action was time-barred because the statute of limitations "started to run when the defendants allegedly had their names put on the deed surreptitiously," whereas the "plaintiff contend[ed] that the operative event for purposes of the period of limitations was the defendants' refusal to give her a year-end bank statement for tax purposes and their refusal to let her enter the premises" and that, therefore, "there are questions of fact as to when the [s]tatute of [l]imitations began to run"); *Sitkowski*, 572 N.Y.S.2d at 932 (explaining that there are at the very least questions of fact as to "when the [D]efendant[s] allegedly breached the agreement [made in executing the Second Deed] by an identifiable, wrongful act demonstrating his refusal to convey [the] interest in the [Property]").  Because the Amended Complaint does not, "on its face, 'clearly show[] [Plaintiffs' constructive trust] claim is out of time,'" *Boles*, 2015 WL 213248, at *1 (quoting *Harris*, 186 F.3d at 250), Defendants' Motion is denied as to Plaintiffs' constructive trust claim.

C.  Adverse Possession Claim

1.  Applicable Law

"[T]o establish a claim of adverse possession, the occupation of the property must be (1) hostile and under a claim of right . . . , (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the statutory period (at least 10 years)."  *Millington v. Kenny & Dittrich Amherst, LLC*, 2 N.Y.S.3d 273, 275 (App. Div. 2015) (internal quotation marks omitted); *see also Reardon v. Broadwell*, 993 N.Y.S.2d 836, 837 (App. Div. 2014) (same).  "Reduced to its essentials, this means nothing more than that there must be possession in fact of a type that would give the owner a cause of action in ejectment against the occupier throughout the prescriptive period."  *Talmage v. Ronald Altman Tr.*, 871 F. Supp. 1577, 1585 (E.D.N.Y. 1994) (internal quotation marks omitted).

"Under longstanding decisional law applying these traditional common-law elements, a party seeking adverse possession could assert that he or she was acting under a claim of right regardless of whether he or she had actual knowledge of the true owner at the time of possession."  *Hogan v. Kelly*, 927 N.Y.S.2d 157, 159 (App. Div. 2011); *see also Stickler v. Halevy*, 794 F. Supp. 2d 385, 399 (E.D.N.Y. 2011) (applying the traditional elements and explaining that "the manifest acts of the possessor are what put the owner on notice of the hostile claim").  In 2008, however, the New York Legislature enacted changes to the adverse possession statutes, which "include[d], for the first time, a statutory definition of the 'claim of right' element necessary to acquire title by adverse possession."  *Hogan*, 927 N.Y.S.2d at 159.  The amended statute provides that, "[a] claim of right means a reasonable basis for the belief that the property belongs to the adverse possessor or property owner, as the case may be."  N.Y. Real Prop. Acts. Law § 501(3).  The 2008 amendments "took effect on July 7, 2008, and apply to all claims filed

on or after the effective date of the amendments." *Hogan*, 927 N.Y.S.2d at 159.  The Second

Department has instructed that if an action is

> commenced after the effective date of the 2008 amendments . . . [they] cannot be
> retroactively applied to deprive a claimant of a property right which vested prior
> to their enactment . . . . Therefore, the version of the law in effect at the time the
> purported adverse possession allegedly ripened into title is the law applicable to
> the claim, even if the action was commenced after the effective date of the new
> legislation.

*Id.*  Accordingly, if a plaintiff's property right allegedly vested before the effective date of the

2008 amendments, "in the absence of an overt acknowledgment during the statutory period that

ownership rested with another party, actual knowledge of the true owner [does] not destroy the

element of claim of right." *In re Lee*, 946 N.Y.S.2d 621, 623 (App. Div. 2012) (internal

quotation marks omitted).

At least prior to the 2008 amendments, "[f]or possession to be hostile it must be without

permission and non-consensual." *Stickler*, 794 F. Supp. 2d at 398.  "Seeking permission, but

little else, would negate hostility." *Id.*  Indeed, "[t]here is a presumption of hostility if use is

open, notorious, and continuous for the statutory period." *Id.* at 398–99; *see also Talmage*, 871

F. Supp. at 1586 (same).  Accordingly, "the burden shifts to the owner to show that the use was

permissive." *Koepp v. Holland*, 688 F. Supp. 2d 65, 82 (N.D.N.Y. 2010), *aff'd*, 593 F. App'x 20

(2d Cir. 2014).  Nevertheless,

> while it is true that the element of hostile use under a claim of right may be
> presumed if the other elements have been proven, where it is shown that the user
> and the landowner are related by blood . . . the proponent is not accorded the
> benefit of presumption, and the onus remains on the proponent to come forward
> with evidence of hostile use sufficient to raise a triable issue of fact.

*Turner v. Baisley*, 602 N.Y.S.2d 907, 908–09 (App. Div. 1993) (alteration in original) (citation

and internal quotation marks omitted); *see also Talmage*, 871 F. Supp. at 1586–87 (same).

2.  Application

Defendants do not dispute that Plaintiffs adequately allege the first three elements of an

adverse possession claim.  Indeed, Plaintiffs claim that they "have for more than [10] years and

under claim of right, been in hostile, actual, open, notorious, exclusive[,] and continuous

possession of the Property," during which time they have "paid all taxes pertaining to the

Property, maintained the condition of the Property, made permanent repairs, capital

improvements, maintained insurance coverage, never paid rent and [D]efendants never

demanded any rent, and have always conducted themselves as the de facto fee simple owners of

the Property."  (Am. Compl. ¶ 36.)  Instead, Defendants contend that Plaintiffs cannot establish

that their possession of the Property was hostile.  To begin, taking the allegations in the

Amended Complaint as true, the 2008 amendments to the adverse possession statutes are

inapplicable to Plaintiffs' claim.  Plaintiffs allege that "[t]here has been actual and continuous

occupation and possession of the Property by Plaintiffs since 1984 and for more than 25 years

since defendants became the fee simple owners of the Property pursuant to the Second Deed and

subsequent February 2001 deed," (*id.* ¶ 33), and that they have "actually and continually held,

occupied, possessed, used[,] and enjoyed the Property for more than [10] years and, in fact, for

more than 30 years," (*id.* ¶ 35).  Accordingly, Plaintiffs claim that their "purported adverse

possession allegedly ripened into title," *Hogan*, 927 N.Y.S.2d at 159, in or around 1994, well

before the 2008 amendments to the adverse possession statutes went into effect and the law prior

to the 2008 amendments governs Plaintiffs' adverse possession claim, as alleged.

Defendants argue that Ahmed "cannot establish that he occupied the home in a manner

hostile to Defendants because he voluntarily deeded his interest in the [Property]

to . . . Naushad," and "there is no basis for claiming adverse possession until there is occupation

with the intent to claim title." (Defs.' Mem. 8.)  Plaintiffs allege, however, that even though Ahmed and Mustafa deeded the legal title of the Property to Naushad, they believed that "the house would be owned equally by each of Mohamed[]'s children." (Am. Compl. ¶ 22.)  Under the "longstanding decisional law applying the[] traditional common-law elements [of an adverse possession claim]," which Plaintiffs adequately allege governs their claim here, "a party seeking adverse possession [may] assert that he or she was acting under a claim of right regardless of whether he or she had actual knowledge of the true owner at the time of possession." *Hogan*, 927 N.Y.S.2d at 159 (internal quotation marks omitted); *see also Stickler*, 794 F. Supp. 2d at 399 (explaining that although "[s]ome courts have held that [a] plaintiff's affirmative knowledge of another's legal title in the property defeats her adverse possession claim if knowledge existed during the statutory period[,] . . . [t]he Appellate Division [has] held . . . that a possessor's subjective belief or motive is irrelevant to the claim; the manifest acts of the possessor are what put the owner on notice of the hostile claim" (citing *Walling v. Przybylo*, 851 N.E.2d 1167, 1170 (N.Y. 2006))).  Plaintiffs allege that, since 1984, they were in actual possession of the Property, paid real estate taxes on the Property, made all repairs and capital improvements to the Property at their own cost and expense, and they held themselves out as owners of the Property. (Am. Compl. ¶¶ 18–19.)  These actions may have been sufficient to put Defendants on notice of a hostile claim and suggest that there was "possession in fact of a type that would give [Defendants] a cause of action in ejectment against the occupier throughout the prescriptive period." *Talmage*, 871 F. Supp. at 1585 (internal quotation marks omitted).

Nevertheless, Plaintiffs do not state a claim for adverse possession.  Defendants are correct that New York courts have found that "a familial relationship is not accorded the benefit of . . . a presumption [of hostility] and," accordingly, the burden of establishing hostility rests

with Plaintiffs.  (Defs.' Mem. 7.)  *See Turner*, 602 N.Y.S.2d at 908–09 (explaining that there is no benefit of presumption when the "user and the landowner are related by blood").  Accordingly, Plaintiffs must allege, in more than a conclusory fashion, that their possession was hostile and under a claim of right.  *See Giannasca v. Lind*, 934 N.Y.S.2d 656, 658–59 (Sup. Ct. 2011) (explaining that the "plaintiffs . . . failed to allege, except in a conclusory fashion, that the use of the parcel was hostile," and dismissing the plaintiffs' adverse possession claim where the parties were related by blood and, therefore, the plaintiffs needed to allege hostile use, rather than "rel[y] upon the assumption of hostility").  Plaintiffs fail to do so here.  Instead, the Amended Complaint alleges that Plaintiffs' occupation of the Property was consensual.  Specifically, Plaintiffs claim that the Second Deed was made "with the express understanding that . . . Plaintiffs would be permitted to reside at the [Property] for as long as they should live and that the house would be owned equally by each of Mohamed[]'s children," (Am. Compl. ¶ 22), and that it was understood that Mohamed and Naushad were to hold complete legal title to the Property in trust for the purpose of allowing Plaintiffs to reside at the Property, (*id.* ¶ 24).  Because "[f]or possession to be hostile it must be without permission and non-consensual," *Stickler*, 794 F. Supp. 2d at 398, Plaintiffs cannot allege hostility while claiming that Defendants permitted Plaintiffs to reside at the Property.  *See Albright v. Beesimer*, 733 N.Y.S.2d 251, 253 (App. Div. 2001) (explaining that a conversation the parties had in which they agreed that the plaintiffs could use the land in dispute was "an acknowledgment [that] defeats the claim of adverse possession"); *cf. Lee*, 946 N.Y.S.2d at 623 (holding that the plaintiffs sufficiently alleged that their possession was hostile and under a claim of right where, among other things, "the amended complaint, amplified by the affidavits, alleges that [the plaintiff] never had any communication with the decedent concerning her possession of the premises [and] that the

plaintiffs never sought or gained the express or implied permission of the decedent to use or possess the premises"); *Stickler*, 794 F. Supp. 2d at 399 (explaining that "[i]f a jury finds that [the plaintiff's] use and occupation of the [d]isputed [a]rea infringed on the defendants' interests without permission, the claim could be found to be hostile"). Accordingly, Plaintiffs do not sufficiently allege that they adversely possessed the Property.

### III. Conclusion

In light of the foregoing analysis, the Court grants in part and denies in part Defendants' Motion for Judgment on the Pleadings. Specifically, the Motion is denied as to Plaintiffs' constructive trust claim and granted as to Plaintiffs' adverse possession claim. The Clerk of Court is respectfully requested to terminate the pending Motion. (Dkt. No. 17.)

SO ORDERED.

DATED:     October 27, 2015
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

19